Case No. 16-1832, Tanganeka Phillips v. United Automobile Workers International et al. Oral argument not to exceed 10 minutes for plaintiff, 5 minutes for re-securitized, and 15 minutes for defendant. Ms. Phillips raises three issues in this appeal, but I am going to spend my time this morning on the first. First, whether this Court should follow the Eighth Circuit decision in Dowd and hold that unions can be liable for hostile environment claims under Title VII, Section 703C. And that question is actually easily resolved by the statutory text and the U.S. Supreme Court's decision in Burlington Northern v. White. Talk about, is there another circuit that thinks differently than Dowd? There are no courts that think differently. There are two other circuits that seem to agree with Dowd, although the holdings are not as clear. One is the First Circuit decision in Dixon that we discussed at pages 13-14 of our reply brief. The other is a case not cited in the briefs, Seymour v. Chauver & Sons, a Tenth Circuit case from 1997. That's 111F3-794 at page 798. I would say both of those cases support Dowd. There are no cases that go in the other direction. If you do, that will create a circuit split. Are they relying on a Seventh Circuit case? They rely on the Seventh Circuit case in Pipefitters. That case is not on point because their Judge Posner draws a distinction between the employer acting as employer and the union acting as union. And all he says is when it's the employer that's engaged in the hostile conduct, the union can't be held responsible for that unless they're somehow acquiescing or participating in that, which is consistent with the statutory text. That's not the claim here. Correct. Here the claim is that the union itself was discriminating based on race against its own union members. Is Hall the head of the UAW International now? What was the question? Hall was with the UAW International, yes. He was not the only UAW International person involved. The primary player here is Johnson, who was the one who had all these contacts with the local union. Hall is not his superior? Hall is his superior. And is Hall the head of the union? No, King was the head of the UAW International. So I do want to focus on the text because I think with the Burlington Northern case that makes this a relatively easy analysis to agree with Dowd. And I've got this color-coded one-pager that all of you should have. Opposing counsel does as well. If you start... Counsel, just a moment please. You said it's on the bench and I don't see it. Okay. Thank you. Behind what? Behind the bench. What's that mean? Behind the bench slip. Behind the bench slip. There you go. All right. Thank you. Good. Because I do think this will make things a little easier. Got it. We have it now. If you start with 703C, this is the one in the middle. This is the anti-discrimination provision that applies to unions. It makes it unlawful for the union to discriminate against someone based on their race or sex. Very simple. If you compare that to the one at the bottom, 704A, this is the anti-retaliation provision. And the language is exactly the same. You cannot discriminate against someone based on their protected report of Title VII violations. Now both of those contrast with the top one, 703A. And this is the employer discrimination provision. It has that same language to discriminate against, but then it has that long tag with respect to compensation terms, conditions, or privileges of employment. Those extra words limit the scope of employer discrimination to conditions of employment. Now the Supreme Court in Burlington Northern analyzed the difference between 703A, employer discrimination, and 704A, the one on the bottom, retaliation, and said that those words make a difference. Do you view the titles for these sections as limiting or broadening? I do not. I think they're purely descriptive. I don't think the titles modify the analysis. You say that the union has to follow the same basic policies that the employer does and vice versa. Not really. Their contention is that the union provision, 703C, does not include hostile environment claims unless they're based on the terms of employment, which is that green section in 703A. And the Supreme Court rejected. You agree with that, right? Of course we do. And the Supreme Court disagrees with that. You say that the standards for the union and the employer should be the same. You say that. No. Our view is that 703C, discrimination, is not limited to terms of employment. So if the union has a segregated bathroom or a segregated union picnic or assigns employees to different locations based on race or sex, it is prohibited from doing that even though it does not affect the terms and conditions of their employment. And that's essentially what the Supreme Court said in Burlington Northern. In terms of racial harassment. Correct. They are the same. They both prohibit racial harassment. However, an employer's racial harassment is limited to harassment that affects terms and conditions of employment because those words of limitation are in 703A. They are not in 703C. They are not in 704A. So under the union's position, if they're right, a plaintiff can sue a union for hostile environment retaliation under 704A but can't sue for hostile environment discrimination under 703C even though the language is absolutely identical. Don't we have to look at the language in 703C1, this language, or otherwise to discriminate against in the context of the words immediately preceding it? Absolutely. And what that tells you is that those words apply only to people who are either in the union or could be in the union. This isn't a clause that applies just to anybody in the world. But what this does do is it prevents them from having a segregated bathroom in a union hall. Their entire brief is devoted to the notion that unions can discriminate based on race, although they can't retaliate for a hostile environment under 704A. That's what Burlington Northern says. But in all other respects, they can discriminate based on race. And that's ludicrous. Why would the statute even include the particulars about union discrimination if the words are otherwise to discriminate against are as broadly intended as you would argue? Everything in these statutes would otherwise be completely subsumed within and be surplusage to the words are otherwise to discriminate against. Well, that would be true of 703A and 704A as well, and the courts have never interpreted these provisions that way. I look at that beginning clause there, to exclude or to expel from its membership, to define the scope of people that 703C has an impact on. That is, those who are in or want to be in. Is there any authority that says what you just said? I know that's how you view it. But is there any case that says that the purpose of those prefatory words are to limit the class of people we're talking about? I'm not aware of a case that says that. But by analogy, if we look at 703A, your argument would also make the words to fail or refuse to hire or to discharge superfluous or otherwise to discriminate against would have subsumed that as well. So in both cases, what Congress says is, here's something very specific you can't do. In addition, we don't want you discriminating in any other way either. And that's why the courts have said hostile environment claims are valid claims. What the union wants to do is it wants to take the terms of employment language from 703A and graft it into 703C. And that they can't do. I see that my time is done. Thank you. Good morning, and may it please the court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as amicus curiae in this matter. As we explain in our brief, ordinary rules of statutory construction lead to the conclusion that the term discriminate encompasses harassment, both within the anti-retaliation provision as this court held in Morris and in Hawkins and in the labor organization provision, section 703C1. I'd like to respond this morning to three points. It means the same thing for the employer and the union. That's what you're saying. It is with one clarification, and that is with respect to the sphere of influence that each of those entities has. So for the employer, they only are responsible for harassment that happens within the workplace that they can control or by their employees. So, for instance, Plaintiff Phillips had no cause of action against MGM for the harassment perpetrated by union agents and employees. That happened down the street and off the premises of MGM at the local union offices, and they have no control over Brian Johnson, the alleged perpetrator. On the other hand, the union would not be liable for harassment that takes place on MGM premises by other MGM coworkers because they have no ability to. You have to have a definition that limits to whoever the union or the employer can control. Exactly. A control element has to be imposed here. Exactly. Now, the UAW argues in its brief at page 29 that reversing the district court on this legal point would make the unions liable for any conduct toward any person, and that is clearly not the case. How do you say that? Because of the language, the statute. What's the limitation that you rely upon? Yes, that Section 703C1 is informed by the entire phrase there. So, to exclude or expel from membership or otherwise to discriminate taken as a whole describes the sphere of what a labor organization can be held liable for, and that is discrimination that happens within the context of union activities and union privileges. Here, the harassment is alleged to have occurred as they were processing grievances. So you agree. It sounds like you may take a different stance than Mr. Birch because you say there is a limitation by the related phrasing there. I was trying to say the same thing as Mr. Birch, so I apologize for the lack of clarity. I know. I'm thinking you were. But, okay, you say it's – I said what limitation would there be, and you said it's limited by the language surrounding it. Not to membership only because that would make the otherwise discriminate superfluous, which we agree Congress would not do, but by the sphere of the kind of harassment. So, for instance, if a union employee or official were to walk into a deli at lunchtime and harass the waitress, the union would not be liable for that. That's totally outside the sphere of the union activities. It's the control imposing the control. Exactly. Here where it happened in the context of processing grievances at the local union's office. Do you regard – do you think that there's any split in the circuits now over this difference of opinion between the EEOC and the union or not? No. We have identified two of the circuits in our brief that have held unions can be liable in this context, and as Mr. Birch said, there's a third circuit, the Tenth Circuit, that has suggested the same thing. And I'm not familiar with the Ninth Circuit. You said Eighth. The Eighth Circuit, yes. The Eighth Circuit and the First Circuit endowed and Dixon, and the Tenth Circuit – You don't regard the Posner opinion as creating any – Not at all. But if we should decide in accordance with the district court, we would create a split in the circuits. That is exactly correct. Yes. So the Seventh Circuit and the Third Circuit held that a union couldn't be liable for the harassment that takes place in the workplace. In the workplace. And so they are not at odds with the Eighth Circuit and the First Circuit decision, but this court, if it affirms the district court, would in fact create that kind of a conflict. Is pipefitters really that easily distinguished or disposed of? The court did say, if it discriminates – and it's talking here about the union – if it discriminates in the performance of its agency function, it violates Title VII, but not otherwise. What does that mean? I see my time is up. May I answer the question? Yeah, you may. So, in other words, if the union members had filed grievances about the harassment that happened at that worksite in pipefitters, and the union had refused to process those grievances, that would fall within union liability for discrimination under Title VII. But where here, the allegation was simply that the Porter-Johns had graffiti and racial epithets, and the union officials knew about it, but it was the employer's responsibility to fix that. It was coworkers that were doing it. The Seventh Circuit said that we will not hold the union liability for merely doing nothing about something that is the employer's responsibility to fix. And in that case, was the offensive graffiti placed there by company employees or by union employees? Well, it was a unionized workplace, so they were union members, but not union employees. All right, so let's assume for a second that the graffiti in pipefitters was placed there by union management, Johnson-type people, as opposed to the unionized employees of the employer. What would happen then under pipefitters? I think the Seventh Circuit would say that if the union had noticed that its agents or employees were doing that, and the union failed to take steps to pull its own people in line, the union would be liable for that. Is there language in pipefitters that allows you to draw that conclusion? No, because it wasn't the facts of the case, so the court didn't drift into that. All right, fair enough. Thank you. If the court has no further questions, we'll rely on our board. Well, I do have one. So EEOC takes no position as to, with respect to the issue of whether there actually was a hostile environment here? We didn't address that because we typically focus on district court errors, and we think the district court got that correct. Thank you. May it please the Court, Your Honor, Patrick Rory on behalf of the UAW International. What appellants are essentially arguing, Your Honor, is that Title VII should be expanded for claims of workplace harassment in instances for liability against entities that have absolutely no control over the employment opportunities that exist. Let me ask you this. Are you arguing to us that the employers should be responsible for or liable for a discriminatory workplace, that is, harassment of that kind, but that because of the wording of the statute, the union should not be responsible for that same kind of harassment of those that it controls? Is that what you're – that's your argument, basically? Our argument is not to say the wording of it, Judge, but the purpose and intent of Title VII, right, which is to prohibit workplace discrimination and hold those liable – to hold liable those who have control over the terms and conditions of employment here. And unions acting in their agency function do not have control over the terms and conditions. In this case, they say they do. Well, Plaintiff brings this case sort of under multiple hats as an employee of the casino here, the co-defendant casino, and she goes to great lengths in attempting to prove that she's an employee of the international union, the district court. The woman here claims that she is under the control for purposes of this case of the union and not the employer, right? Well, yes. I mean, that issue wasn't necessarily litigated, but – and appealed. So there – I mean, there's no real question about who she's claiming is controlling her and who is harassing her on the basis of race. There's no question about that. So it's not really raised? Is that what we have here? Well, I think the issue is not necessarily to focus on who's doing the harassing, right, but on the capacity of that harasser to control the employment opportunities of – You're arguing that the employer ought to be responsible for a workplace harassment, but that if the union has control of the workplace, that it should not be. I don't understand why there should be a policy difference or a moral difference for that matter. Well, I think the key issue here, Judge, which the district court went to great lengths of finding, is that the international union here did not have control over plaintiff's terms and conditions of employment, either as a casino employee or as an agent of the local union. The international union here and the local union are separate and autonomous entities under the UAW Constitution. Would you still win if we ruled for Mr. Birch's position but also found that she was an employee of the local union and not the international union? Yes, Your Honor, because the issue still is, right? when harassing, right? And the appellants cite the Sixth Circuit case in Christopher V. Stouter Memorial Hospital, where the court held that third-party harassers here could be held liable under a hostile work environment claim, but only in instances where that harassing entity had control over the workplace environment. Simply put, can you hold an entity liable for creating a hostile work environment when that entity has no control over the workplace environment to begin with? Did the district court get into this problem of to what extent the international union had control and to what extent the international union had control over the local union or didn't have control over the local union and to what extent a distinction should be made between the international union's people, that activity, and the local union? It did, Your Honor, and it went to great lengths to cite a number of factors on the record here that distinguish the international union here from the local. And it analyzed that under the common law agency theory. So is the question of whether that is an era before us here now, whether that distinction made that the international union had nothing to do with the creation of an harassing workplace, but it was solely the local union who was responsible, is that before us here now? No, Judge. I think the issue is to focus on how liability should be imposed on a union here under 703C, which by its plain language applies to discrimination in terms of membership status upon referral of members to jobs, all of which in the collective bargaining relationship have a direct impact on terms and conditions of employment. She's already sued the local union, and that matter has been settled, right? No, she has not, Judge. She didn't sue, she never sued the local? Local has never been a party in this case. Let me follow up on my earlier question. Let's assume that she is an employee of the local union, not an employee of the international union. But there's no doubt here that the allegedly discriminatory conduct that created the hostile work environment was occasioned by an employee of the international union, right? Correct. So it does seem, if we were to agree with Mr. Birch's position, it does seem to me to be, to answer my own question, a little bit disingenuous to then say the local union, the international union is freed of any liability for whatever its employees do who is not their employee. See what I mean? I do, Judge. I think the distinction has to be between focusing on how the international union was acting here. Were they acting as an employer, right? Or were they acting as a representative of members? And Plaintiff here brings this case not as a rank-and-file member challenging her representation. So under your analogy, had that been the case, Plaintiff would have clearly had a cause of action, not under Title VII, but under the National Labor Relations Act, to challenge the representation that she received. So you're agreeing that pipefitters doesn't apply to our case then? I do not agree, Your Honor. That's what you just said. If I said that, it wasn't intended, Judge. I think what the pipefitters' holding was in analyzing Section 703C, right, it's important to look at the titles that the alleged harassing entities here have, and they specifically held in contrast to Dowd's finding that under Section 703 does not impose liability on a union for a claim of harassment when it acts in its agency function because the workplace is controlled by the employer, not the union. But you're saying this was not an agency function case? Correct. The union isn't being sued for failure to represent fairly the employees or something like that? Correct. So if that's what pipefitters is about, then how does pipefitters apply to this case? Because I think pipefitters, they focused on a finding of whether Title VII should be expanded to entities that do not necessarily control employment opportunities when dealing with a workplace harassment claim. So the fact that even assuming that plaintiff here was employed by the local union. So you're saying that the defendant here, the international union, does not control the employees who the plaintiff claims did the harassing. Is that what you're saying? No, Your Honor. What we're saying is that the international union here does not control the employment opportunities of the plaintiff, either as a casino employee or as a local union, elected union agent. You're saying that they can, with regard to their employees or those who they are controlling, create a hostile work environment that an employer could not do, but they're exempt from liability for that. Is that right? That's right. Under Section 703C. I just don't see how Congress could have had a policy that says, well, the employer is responsible, but the union is not. The union is responsible for harassing conduct, Your Honor, but only in the context of its representational function. If the harassing conduct somehow impacted a union member's representation in terms of processing grievances. You're just saying that the union doesn't have any responsibility or liability for creating a harassing environment, but only if they discriminate in hiring and firing. That's what you're saying. Yes, Judge. I agree with, I want to follow up with what Judge Merritt's, is it possible that the court and everyone is, the term harassment does sort of fit, I'll call it insulting conduct by Mr. Johnson. He insults Ms. Phillips and her sensibilities about race in a very grievous way. But Congress may not have intended to hold unions liable for a creep like Johnson saying the things he did because it can't affect her rights as a union member. Normally, I mean under 703C, all the rights of membership are what we're talking about. I don't know, the insulting doesn't seem to fit. That we even, we don't usually legislate about unions and their members other than with membership rights. We'll call it that, generally speaking. Because we expect unions and their members to be simpatico. I agree, Judge. In essence, I think what you're getting at is, what opponents are attempting to do is to expand the scope of Title VII to resolve internal union disputes. And that's really what this is. Employee, I mean, union members and their inside bosses, that doesn't seem to affect anything that Congress would care about. They'd say behave or let the union discipline. I think under Title VII, I agree with you, Judge. You're saying Congress said let the union harass them in the workplace. No, Judge. Because it doesn't have to do with membership. We just can't fix it. What you're saying is, I understand it. I just want to know what you're, you're saying there should be a distinction between an employer as to harassment in the workplace and a union. The union can't discriminate based on who is a member of the union. Correct. But they can discriminate all day long and harass all day long in the relationship with their employees. I think the intent, what Congress intended, Judge, in enacting Title VII was to impose. Why would Congress want to exempt unions from the same responsibility that employers have? I don't understand what the policy or the philosophy would be to exempt unions from the same kind of responsibility. It's not the same conduct, Judge, in terms of its impact and its purpose. And our position is that it makes people feel bad in the same way. Sure, absolutely. But it can't harm them in their work. That's what I'm worried about, whether we have a distinction here, because all she wants out of that union is she doesn't want to work with people who are ugly and rude about race. But he can't affect her membership. He can't classify her work in any way or not consider her grievances. He did put them in piles, though, and say black lose, white win. Well, that gets to the issue, the factual issue of whether or not he was providing good representation, fair representation. Which is different. Which is a separate statute and one in which Title VII does not go. That's contrary to the Dowd case, right? I'm sorry, Judge? Your position is contrary to the Dowd case. That's right. Our position is that Dowd ignored the origins of a hostile work environment case, which was the Supreme Court announced in the Vinson as well as the Vance case. McKeague has a quick question. That's right. Judge Merritt's still asking questions. I see my time is up. I want to take us back, so we get your view on this, to what your friend's textualist argument is about this. And I derive two things from what he's saying. First off, when you look at 703A and you compare it to 703C, and we see that the words to discriminate against appear in both. In the employer's section, it goes on, excuse me, let me say one other thing. And they both conclude by saying because of such individuals, race, color, religion, sex, or national origin. So that's all the same. Now, in A, they insert the words that Mr. Birch has outlined in green. With respect to compensation terms, conditions, or privileges of employment for employers, that same language does not appear between the words to discriminate against and the race and sex language in C. So essentially, first off, he's arguing that the prohibition against a hostile work environment for a labor union is actually broader than it is for an employer. So very briefly, what's your response to that? I would point the court to the Supreme Court's decision in Meritor Savings Bank v. Vinson, which addressed that very issue and looked at the language of 703A1 and found that that was an expansive concept, not a limiting concept, which sweeps within its protective ambit. The first argument, in your view, is answered by Vinson? Correct. Okay. Now, the second thing I want to conclude by is asking you the same question I asked Mr. Birch when he was up first, and that is, do we read the words or otherwise discriminate against in C in connection with the words to exclude or to expel from its membership? And Mr. Birch said, no, you don't do that. That just describes the sphere of people we're talking about, although he concedes there isn't any authority for that. But his best argument, I think, in saying that it's not limited by that is that otherwise A would be similarly limited. And it hasn't been held to be so similarly limited. So what's your response to that? I think the response is that beyond the actual language, Judge, is the compelling argument is looking at the purpose and intent of the statute, right, which focuses on liability for entities that control workplace environments, right? And in that language in 7A, courts have consistently held that the origin of the hostile work environment claim is derived from that language. But the interesting part about that, this case has some interesting facts that may make it easier or harder. I don't know. This allegedly discriminatory conduct that created a hostile environment by Johnson was not occurring, for example, on the casino floor, where you would typically think the employer is responsible for that environment. As I understand it, it was occurring in the union offices. Now, in this case, that happened to be the local union offices. But there's clearly a connection between the local and the international in some respects. So why do we so cavalierly say, well, it's the employer's job to control the workplace environment? When this particular discrimination occurred, it seems to me not in the workplace environment as we would traditionally say it, but rather within the union offices. But I think the key, Judge, is not to look at the you still have to find some workplace environment, right, to create a liability under a hostile work environment theory. Well, it could be the workplace environment of what the plaintiff did on the casino floor representing employees. It could be the workplace environment where she's doing her union work, which is in the union office. Right. But why would we want to say that unions can discriminate, that unions can have hostile environments within the union office, ignoring whether they're responsible for anything that happens on the casino floor? I think we're not ignoring it, Judge. And I think what you're getting at is that unions can be held liable for creating a hostile work environment, but only in their capacity as an employer, right, that control the terms and conditions of a victim of harassment here. Right. Plaintiff was none of those. Plaintiff was an agent of a local union that was separate and distinct from the international union. Right. She alleges that her membership status in no particular way was impacted. And the district court... You're kind of conceding that within the union offices, the local union that was her employer might in fact be subject to a hostile environment claim. Is that right? Correct. But not the international... But in that case, it's not because of a reading of 703A versus 703C. It's a difference of employer, non-employer. Correct. Okay, I got it. Thank you. So... Judge Merritt has another question. Do you agree that if we agree with you, we're going to create a split in the circuits with Dowd and maybe one or two of these other cases as well? I think if we agree with me, the court's decision would be consistent with pipefitters in its very premise. It would distinguish Dowd in its analysis and reasoning, which, again, ignores the textual origin of a hostile work environment claim. And quite frankly, it can be distinguished on the facts here. Okay, we have that point. All right, counsel. Thank you. Thank you. Mr. Burch. I'd like to begin with... I think we finally got to kind of the heart of it here. I think we have. So what say you about that? Let me start with your last point, which kind of dovetails with Judge Cook's question about whether union harassment of an employee in the union hall should be actionable under 703C. And the answer is yes, because that absolutely affects her rights as a union member. She has a right to be in that union hall and not be harassed. She has a right to have her grievances processed, not based on her race. She has the right to be on a panel. Just because of her race, I just think... I keep thinking it's just really... He was an oaf and racially in error all the time. He was. What did it affect? It affected her rights as a union member because she didn't want to be in the hall, her grievances wouldn't be processed, and she couldn't even participate on the grievance board where she would process other people's grievances. Because he didn't know... Because it was so hostile. He was driving her out of there. So these go right to the core. Let's start with the proposition that talks about what's happening in the union hall. We've narrowed it down a little bit now. Correct. Then your friend goes to the point that the statute only extends to a union employer. That's not what it says. And that's the second point I wanted to cover. It goes back to your earlier question, kind of this division. Our second question presented goes after the Union International as an employer because of its control. That would be a cause of action under 703A. But 703C is not limited to a union as employer. It's limited to... I'm sorry. It applies to unlawful practices of the labor organization. It says an unlawful employment practice. Right. I mean, it's defining an unlawful employment practice as discriminating against someone. Doesn't employment practice presume an employer-employee relationship? No, because the labor organization international can send its employees to the local, just like it did here, and they can be the harassers. And when international is doing it, that deprives Ms. Phillips of her rights as a union member, just as much as it does if the local people do it. In fact, here the local people were trying to stop it. And on the point of whether this affected her qua union member, she testified about that. On page ID 342 of the electronic record, she testifies about how this discrimination affects her as a member of the union, not as an employee of MGM. Keeping in mind these two sites are about a five-minute drive apart from each other. So the question of how much control the national union has applies only to the second question presented, whether we can stick them with 703A liability. But if the national union is the one coming into the local union hall and affecting her rights as a union member because of race, that's clearly within the ambit of 703C, and that's exactly what the executive says. So if we go back to 703A to try to, because you're trying to make these either be parallel or sometimes not. I'm trying to construe them all in context so they match with 703A. So if we construe it in context, where you took me in our earlier discussion. Let's assume that you had a parent and a subsidiary employer, and you're under 703A. Yes. No question that an employer, the subsidiary, can be liable under 703A. Yes. If the parent sends somebody in and says things that are arguably a hostile environment, is the parent also liable under 703A the same as the international would be liable under 703C? No, because they would only be liable if they had sufficient control over the employee. They would be considered their employer. That's our second question presented with respect to the national. But 703C. You're saying the parent could be liable if they actually controlled the employee who worked for the subsidiary. Correct. But if there was no control. So then the fact question here is whether the international actually controls the employee. On the second question presented. Right. On the first question presented, there's no question that international is a labor organization. But the first question is irrelevant if, under the second question, the international doesn't control the employee. No. That's incorrect because 703A is an employer test. 703C is a labor organization test. And an international can be a labor organization. But you're not suing under 703A. Well, we would like to. If you agree with us, under the second question presented, that they had sufficient control. Maybe you'd like to, but you didn't. We did. We have a claim under 703A and under 703C. Okay. We have both. So if you agree with us on the second question, and there's testimony in our brief about the control the international exercises over the local, then we get a 703A claim, too. But if we're wrong about that, and they don't have that control, simply because their people did the harassment as a labor organization, they are liable under 703C. I don't think there's any dispute about that. Whether they control or not. Whether they control or not. The fact that they send people in and deprive her of her rights as a union member is all that the statute requires. What rights? Her rights to be in the union hall without being discriminated against. In there without hearing all of it. Right. Or the right to be able to have a bathroom that's not segregated based on race. I mean, under their position, they could do that. They don't. But they could. And that's what they're advocating. I understand the lights on. I'm just going to give you the test that I think you should adopt. This would be consistent with the Eighth Circuit. The standard you should apply to a hostile environment claim under 703C is whether the union engaged in conduct that might dissuade a reasonable employee from joining the union, that's the first part, or exercising his or her rights to participate fully in union activities and benefits. They have absolutely denied the second part of that. That's why you should reverse. Thank you. All right. Thank you, counsel. It's an interesting case, and we will take it under advisement and issue an opinion in due course.